## Philadelphia, Appellant, *v.* Philadelphia Transportation Company.

Argued April 24, 1961.   Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Harold E. Kohn,* with him *William T. Coleman, Jr.,* Special Counsel for City of Philadelphia, and *David Berger,* City Solicitor, for appellant.

*Hamilton C. Connor, Jr.,* with him *Edward G. Bauer, Jr., Peter Platten,* and *Ballard, Spahr, Andrews & Ingersoll,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, June 26, 1961:

This appeal presents the problem of the availability of a declaratory judgment proceeding to construe and interpret an option-to-purchase provision in a written agreement between the City of Philadelphia (City) and Philadelphia Transportation Company (PTC).

On July 1, 1907, the City and the Philadelphia Rapid Transit Company, of which PTC is now the successor, entered into a written agreement which, by a later extension, remains effective until July 1, 1962. Under the provisions of that agreement, the City is granted an option to purchase on the first of July of any year, while the agreement is in force, all the leaseholds, franchises, real and personal property of PTC

and its wholly-owned subsidiaries. If the City exercises that option, the option price is to be ascertained in accordance with a formula set forth in paragraph 11 of the agreement.[1]

On June 6, 1960, the City filed a petition for a declaratory judgment in Court of Common Pleas No. 1 of Philadelphia County in which proceeding that court was asked to determine both the proper construction of paragraph 11 of the agreement, i.e., the price fixing formula, and the *option price*. In its petition, inter alia, the City averred that: (1) since April 1, 1952, the City and PTC have been negotiating to establish a proper price for the option; (2) PTC claims that under the formula the option price as of December 31, 1960 exceeds $95,000,000, while the City claims that the option price as of that date does not exceed $62,000,000; (3) the existence of this dispute as to the contract formula and the option price prevents the exercise of the option; (4) the source of the dispute is not only the interpretation of the language of para-

---

[1] As presently pertinent, this paragraph reads: "The City reserves the right to purchase all the property, leaseholds and franchises of the Company and its wholly-owned subsidiaries upon any first day of July hereafter, by serving six months' notice on the Company of its intention so to do and upon paying to the Company upon the date named in said notice, an amount equal to the sum of the face amount, or call price if any, and accrued interest of all then outstanding bonds of, and all then outstanding prior lien bonds, mortgages and ground rents on the property of, Company and its wholly-owned subsidiaries, plus the par value of all then outstanding preferred stock of Company, and an amount equal to ten (10) dollars per share for all then outstanding common stock of Company, and the amount of the then undistributed corporate surplus, if any, of Company . . . . That the City reserves to itself whatever right to condemn it now has or shall hereafter have under any present or future legislation giving the City the right to condemn. . . . The right of the City to purchase under this paragraph shall be assignable and may be put up at public auction to the highest bidder therefor."

graph 11 but in the application of such language, i.e., whether certain items appearing on PTC's books as assets should not be eliminated as worthless, fictitious and excessive, whether PTC's books correctly and properly reflect the depreciation reserve, etc.; (5) it is important that the City, *prior to its exercise of the option,* know the exact price called for under the formula since the City will be required to raise the money for the purchase by a bond issue which will require the electorate's approval.

In its answer raising questions of law, the PTC attacked the jurisdiction of the court to entertain a declaratory judgment under the circumstances, i.e., no actual controversy and no imminent and inevitable litigation threatened, and PTC contended that the City was merely seeking an advisory opinion.

The court below sustained PTC's position and, by an appropriate order dismissed the proceeding. From that order, the City has appealed.

The nub of the lower court's ruling was: "The City has not averred that it has exercised, or will exercise its option; it merely requests the Court to fix the price of an option which may never be exercised. It is quite clear, therefore, that the City, in effect, is asking the Court to issue an advisory opinion."

The City takes the position that there is an actual controversy the nature of which is such as to lend itself to declaratory judgment and that, if the City were to exercise the option prior to ascertaining the purchase price under the formula, such exercise might cause a forfeiture of the City's option rights.

In *Johnson Estate,* 403 Pa. 476, 488, 489, 171 A. 2d 518, we recently said: ". . . a declaratory judgment must not be employed for the determination of rights in anticipation of an event or events which may never occur, or for the consideration of moot cases or as a medium for the rendition of advisory opinions." In

*Eureka Casualty Company v. Henderson,* 371 Pa. 587, 592, 92 A. 2d 551, Mr. Chief Justice STERN stated: "One of the chief objectives which declaratory judgment procedure was aimed to accomplish was the furnishing of an expeditious remedy for the settlement of claims, which, in the words of the statute, 'indicate imminent and inevitable litigation',—to settle controversies which, for some reason or other, could be determined more advantageously if settled promptly rather than at some future time when they would require adjudication. In the present case there cannot be said to be a probability, *much less a certainty, that the incipient controversy which now exists between these parties will ever ripen into litigation . . ."* (Emphasis supplied) and the Court then found that the proceeding therein was "an attempt to get the court to decide future rights in anticipation of an event which may not happen" (quoting from *Capital Bank and Trust Company's Petition,* 336 Pa. 108, 111, 6 A. 2d 790). That such is the law in this Commonwealth is clear beyond question: *Kariher's Petition (No. 1),* 284 Pa. 455, 472, 131 A. 265; *Pittsburgh's Consolidated City Charter,* 297 Pa. 502, 506, 507, 147 A. 525; *Allegheny County v. Equitable Gas Co.,* 321 Pa. 127, 183 A. 916; *Kahn v. William Goldman Theatres, Inc.,* 341 Pa. 32, 35, 17 A. 2d 340; *Congregational Conference Appeal,* 352 Pa. 470, 473, 43 A. 2d 1; *Schoenbrun v. Nettrour,* 360 Pa. 474, 476, 61 A. 2d 868. Declaratory judgment will not lie to determine rights in anticipation of an event uncertain of occurrence.

In its quest for a declaratory judgment, the City's position is fatally defective in that the City has not taken *any* official action upon which an intendment to exercise this option can be predicated. True it is that various City officials have indicated that the City wants to exercise this option but even the petition for declaratory judgment does not aver that the City in-

tends to exercise the option—in fact, the petition avers that the exercise of the option *may* be in the best interests of the City. There is a complete lack of any evidence that, even if the price under the formula proved to be satisfactory, the City *would* exercise this option and such willingness to exercise the option can be evidenced only by official action taken by the City, i.e., by an ordinance duly passed by City Council approved by the Mayor: Philadelphia Home Rule Charter, Section 2-200 et seq. Until this is accomplished the exercise of the option is a matter of conjecture and surmise, an event the occurrence of which is uncertain.

The City urges that to require such exercise of the option until the price is ascertained is to demand the impossible. The City argues that, if it did exercise the option for $62,000,000—apparently, the City's top price under the formula—it would be subjected to two risks: (1) if the City exercised its option, the courts might hold the City bound to the purchase even if the price under the formula was fixed in excess of $62,000,000; (2) if a court determined the formula price to be $75,-000,000 and the City had exercised its option at $62,-000,000, the City by naming the wrong price, might be held to have forever forfeited its exercise of the option even at the correct price. Regardless of the City's apprehensions, until the City takes an official position with regard to the exercise of this option declaratory judgment will not lie.

If the City intends to exercise this option, such intent must be evidenced by the passage by City Council of an ordinance, approved by the Mayor, to that end. Such ordinance could be couched in such terms to relieve the City of its apprehensions either as to forfeiting its option rights or becoming obligated to pay a higher price than it deems appropriate. Unless and until the City takes such action, no justiciable contro-

versy exists under the Declaratory Judgment Act. Under the circumstances the court below properly held that it lacked jurisdiction to entertain this petition.

Order affirmed.   Costs on City.